**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHARIEK WILLIAMS, | |
| Plaintiff, | No. 18 CV 6748 |
| v. | Judge Manish S. Shah |
| WILLIAM RANKIN, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Shariek Williams needed colostomy-reversal surgery but never received the operation while incarcerated at different correctional facilities. He alleges the medical staff, healthcare provider, prison wardens, and the Illinois Department of Corrections ignored his serious medical needs in violation of his Eighth Amendment rights. The wardens and IDOC move to dismiss. Their motion is granted.

**I.   Legal Standard**

A complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). At the motion to dismiss stage, I accept the plaintiff's factual allegations as true and draw all reasonable inferences in his favor, but do not accept bare assertions, conclusory statements, or legal conclusions. *Iqbal* at 678–79.

**II.      Facts**

Shariek Williams underwent a colostomy, a surgical procedure that diverts the colon to an artificial opening in the abdominal wall. [20] ¶ 17.[1] Because colostomy patients lose the ability to control their bowel movements and defecate naturally, a bag is attached to the abdominal opening to collect the patient's feces. *Id.* ¶¶ 17, 18. Williams's physician told him the colostomy could be reversed, which would remove the bag and allow Williams to regain control of his bowel movements—reducing the pain, discomfort, and stress he experienced. *Id.* ¶ 18.

Delaying reversal surgery risks complications in the patient's recovery. *See id.* While waiting for the surgery, Williams was incarcerated at several correctional facilities: East Moline Correctional Center, run by wardens Mark Williams and Christine Brannon, from November 2015 to February 2016; Illinois River Correctional Center, run by warden Justin Hammers, from March to September 2016; Pontiac Correctional Center, run by warden Michael Melvin, from September to December 2016; Stateville Correctional Center, run by wardens Randy Pfister, Walter Nicholson, and Sherwin Miles, from January 2017 to February 2019; and Lawrence Correctional Center, run by warden Dee Dee Brookhart, from February until Williams's release in August 2019. *Id.* ¶¶ 5, 12–16. At each facility, Williams told the medical directors and medical staff that he needed a colostomy reversal, which they denied. *Id.* ¶¶ 19, 22–23. He complained to each warden. *Id.* ¶ 21. The

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of filings.

wardens, medical directors, and medical staff authorized daily showers. *Id.* ¶ 20. The medical directors at Stateville told Williams the procedure was too costly and would not be paid for. *Id.* ¶¶ 20, 25. Williams alleges the wardens disciplined him for asserting his constitutional rights instead of helping him get the reversal surgery and appropriate medical care. *Id.* ¶¶ 21, 26.

While at Stateville, Williams filed this lawsuit pro se against Stateville's medical director and Wexford Healthcare. [1]. Aided by recruited counsel, Williams filed an amended complaint, adding multiple defendants: the medical directors and prison wardens at each facility where he had been incarcerated and the Illinois Department of Corrections. [20]. The wardens and IDOC moved to dismiss the complaint. [31].

**III.   Analysis**

Williams concedes IDOC—an agency of the State of Illinois—is not a proper defendant. *See Barnes v. Board of Trustees of University of Illinois*, 946 F.3d 384, 391 (7th Cir. 2020). Williams also concedes that his claims against wardens Mark Williams, Christine Brannon, and Justin Hammers are barred by the statute of limitations. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019) (Section 1983 is subject to Illinois's two-year statute of limitations); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 688 (7th Cir. 2004) (a statute of limitations affirmative defense may be resolved at the pleading stage when the plaintiff admits that the applicable limitations period expired.)

3

(citations omitted). Williams's claims against IDOC and wardens Williams, Brannon, and Hammers are dismissed with prejudice.

Joinder of the remaining five wardens from three different facilities is appropriate. *See* Fed. R. Civ. P. 20(a)(2). Williams's complaint arises out of "a series of events stemming from one issue," his inability to get colostomy-reversal surgery while in state custody. *See Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018). A claim for "an ongoing denial of treatment arising out of one fundamental occurrence" is "well within the bounds of Rule 20(a)(2)" and "stands in stark contrast to [the] scattershot suits" that defendants cite. *Id.*[2] Joining the defendants will ensure consistency in the resolution of common questions of law and fact and minimize "the risk of unfairness" from separate trials, where the "defendants could try to shift blame to the other." *Id.*

Nevertheless, Williams's complaint fails to state a claim against the remaining defendants under Federal Rule of Civil Procedure 12(b)(6). To state a § 1983 claim under the Eighth Amendment, Williams must show "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019).[3] State officials cannot be held liable under § 1983 "unless they had some

---

[2] In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the plaintiff sued 24 defendants over 50 distinct claims. In *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011), the plaintiff sued 15 defendants over 7 distinct claims.

[3] The defendants do not dispute that Williams alleges an objectively serious medical condition. *See e.g. Ferebee v. Cejas*, 161 F.3d 2, 2 (4th Cir. 1998) (unpublished) (colostomy-reversal surgery constituted a serious medical need); *Wellman v. Faulkner*, 715 F.2d 269, 274 (7th Cir. 1983) (lack of sufficient colostomy bags was one aspect of plaintiffs' proof of deliberate indifference). The legal standard Williams cites from *Ortiz v. City of Chicago*, 656

personal involvement in the alleged constitutional deprivation." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Prison officials may be liable if the alleged misconduct "occurs at the official's direction or with his or her knowledge and consent." *Id.* When treating an inmate, prison officials may rely on the judgment of medical staff. *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017). However, non-medical officials may be personally liable if they knew, or had reason to believe, an inmate was receiving inadequate medical care. *Id.* (citing *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) and *Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010)).

Williams's complaint fails to put the wardens on notice that they violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citations omitted). When liability requires proof of personal involvement, factual allegations that lump defendants together are impermissible because "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). While it is reasonable to infer that Williams complained to each warden about needing a colostomy reversal, Williams also alleges that that the medical directors—not the wardens—denied his surgery. [20] ¶¶ 21–23. The wardens and medical staff also authorized daily medical showers. *Id.* ¶ 20. Without explaining a little bit more about the nature of his statements to the wardens, Williams fails to suggest that each warden knew that surgery was necessary and knew that the alternate course of treatment prescribed by the medical

---

F.3d 523, 531 (7th Cir. 2011), is for a Fourth Amendment claim. Williams was convicted and serving a sentence of imprisonment, so the Eighth Amendment applies. *Id.* at 530.

directors was so inadequate as to amount to deliberate indifference. The complaint alleges that Williams's physician told him the colostomy could be reversed, not that it must be reversed. There is no suggestion in the complaint that the wardens were wrong to rely on the expertise of medical staff and that, as a result, each warden ignored Williams's medical needs. *See Diggs*, 850 F.3d at 911; *see also Twombly*, 550 U.S. at 545 (factual allegations cannot be "merely consistent with" wrongdoing, they must plausibly suggest actual wrongdoing). Williams's general allegations are too conclusory about how each warden was personally involved in the denial of treatment and fail to provide the requisite notice to defendants.[4]

Moreover, to the extent Williams intended to plead claims for retaliation, the complaint does not state a claim. The conclusory allegation that wardens punished Williams for asserting constitutional rights is too vague to give the defendants notice of what the constitutionally protected activity was (for example, a formal grievance) and whether the discipline was such that a reasonable person would be deterred from protected speech or activity. *See Manuel v. Nalley*, No. 18-3380, 2020 WL 4048039, at *2 (7th Cir. July 20, 2020) (reciting elements for a prisoner's First Amendment retaliation claim).

---

[4] Williams's complaint establishes that he is suing the wardens in their individual capacity. He uses the term "individual capacity" for each defendant, [20] ¶¶ 12–16, and does not seek injunctive relief. *See Phillips v. Illinois Department of Financial and Professional Regulation*, 718 Fed.App'x 433, 435 (7th Cir. 2018) (first assess whether the plaintiff specified the capacity in which he is suing the defendants, and then look at the relief that the plaintiff seeks … when the plaintiff seeks damages, then his case is a personal-capacity suit) (citing *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) and *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000)).

6

Williams seeks leave to amend his complaint. [47] at 3. "That leave be 'freely given' is especially advisable when such permission is sought after the dismissal of the first complaint." *Barry Aviation Inc.*, 377 F.3d at 687 (citing Fed. R. Civ. P. 15(a)). While this case has taken time to progress, there has been no evidence of undue delay, bad faith, dilatory motive, repeated failures to cure, undue prejudice, or futility, and defendants do not argue otherwise. *See id.* Williams knows about his interactions with each warden and should be able to cure the deficiencies. His request to file a second amended complaint is granted.

**IV. Conclusion**

The defendants' motion to dismiss, [31], is granted. Williams's claims against IDOC, Mark Williams, Christine Brannon, and Justin Hammers are dismissed with prejudice. The claims against the remaining warden defendants, Michael Melvin, Randy Pfister, Walter Nicholson, Sherwin Miles, and Dee Dee Brookhart, are dismissed without prejudice. Williams has leave to file a second amended complaint by August 27, 2020. If Williams does not file an amended complaint, the dismissal of the wardens will convert to a dismissal with prejudice and the case will proceed against Wexford and the medical defendants.

ENTER:

                                                                Manish S. Shah
                                                             United States District Judge

Date: July 30, 2020